UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                                     Case No. 14-cr-98-pp

CHRISTOPHER R. JACKO,

        Defendant.

_____

**ORDER DENYING MOTION REQUESTS FOR JUDICIAL RECOMMENDATION (DKT. NO. 85)**
_____

On October 8, 2014, Judge Rudolph T. Randa sentenced the defendant to serve twelve months on Count One (armed bank robbery) and the mandatory minimum sentence of eighty-four months on Count Two (using and carrying a firearm during a crime of violence), to run consecutively to each other, for a total sentence of ninety-six (96) months in custody. Dkt. Nos. 51, 52. Judge Randa recommended that the Bureau of Prisons give the defendant credit for time served, and that it place him at a facility as close to Milwaukee, Wisconsin as possible. Dkt. No. 52 at 2.

On January 7, 2019—four years and three months after the sentencing—the court received from the plaintiff a motion asking the court to recommend to the Bureau of Prisons that he serve nine to twelve months at the end of his sentence in a residential reentry center (RRC). Dkt. No. 85. The defendant cites 18 U.S.C. §3624(c)(1) as the authority for the court to make this recommendation. Id. at 3. He also points the court to cases, including United

1

States v. Bartels, Case No. 12-cr-20072, 2016 WL 6956796 (E.D. Mich. Nov. 29, 2016) and United States v. Sutherland, Case No. 15-cr-41-JAW-02, 2018 WL 3085169 (D. Maine, June 22, 2018), where district judges have granted such post-sentencing requests for recommendations. Id. at 3-4. The defendant explains that after his sentencing, he first was designated to the Federal Correctional Institution in Elkton, Ohio; he tried to sign up for college training there but couldn't get a loan, and there were no vocational programs at Elkton. Id. at 5. He says that he was then transferred to his current designation at Milan, Michigan, where in July 2018, he started participating in the Life Connections Program, a faith-based residential reentry program. Id. at 5-6. He also indicates that he has received only one incident report during his entire sentence, and that was for oversleeping and being absent from work. Id. at 6. Finally, the defendant points to his personal circumstances: He does not have financial resources and has many financial obligations, he grew up without a home and has lost family members, he is estranged from his son, he has a young daughter with serious health problems, he can't get a good-paying job at Milan, and he is not able to take advantage of other programming at Milan because his sentence is too short. Id. at 6-10.

The government opposes the plaintiff's motion. Dkt. No. 87. It points out that the defendant mounted a collateral attack on his conviction, id. at 1-2; that courts are divided as to whether a district court has the authority to make placement recommendations post-sentencing, id. at 3-4; and that this court

2

does not have information from the Bureau of Prisons about how the defendant fared at Elkton and Milan, id. at 5-6.

Section 3621(b)(4)(B) of Title 18 provides that when the BOP is designating the particular penal or correctional facility in which to place an inmate, it should consider (among other factors) "any statement by the court that imposed the sentence . . . recommending a type of penal or correctional facility as appropriate."[1] That is the provision that allowed Judge Randa to recommend that the BOP place the defendant in a facility as close as possible to Milwaukee. That statute does not say anything about recommendations from the sentencing court regarding placement in a residential reentry center.

Section 3624(c)(1) instructs the director of the BOP to "ensure that a prisoner serving a term of imprisonments spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Congress qualified that instruction by adding the words, "to the extent practicable."

At sentencing, then, §3621(b)(4)(B) allows a court to make a recommendation about a particular penal or correctional facility, and Judge

---

[1] The court notes that in Sutherland, one of the cases the defendant cited in support of his request, the judge stated, "[f]ederal law . . . provides that a sentencing court may make a recommendation that a prisoner serve a term of imprisonment in a residential reentry center," and cited 18 U.S.C. §3621(b). Sutherland, 2018 WL 3085169, *2. With the greatest respect for this court's colleague in Maine, §3621(b)(4)(B) does not mention residential reentry centers. It simply says that the court that imposed the sentence may recommend a type of penal or correctional facility as appropriate.

3

Randa did so. Once the defendant is in custody, it is up to the BOP to comply with the direction in §3624(c)(1), "to the extent practicable." Neither of the two cases the defendant cites discusses the question the government raises—the question of whether a district court has jurisdiction to make any recommendations to the BOP *after* sentencing and *after* the deadline for appealing has passed. The Federal Rules of Criminal Procedure provide a process for courts to amend or correct sentences, but those rules allow such amendments or corrections only to correct a sentence that "resulted from arithmetical, technical or other clear error," Fed. R. Crim. P. 35, or to "correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission," Fed. R. Crim. P. 36. So neither of these rules would give the court the authority to do as the defendant asks.

The court does not need to resolve this legal question today. The court agrees with the government that, even if it has the authority and the jurisdiction to make a non-binding recommendation to the Bureau of Prisons, it would not be appropriate for this court to do so, for several reasons. First, the undersigned judge did not sentence the defendant. Judge Randa sentenced the defendant over four years ago, before the undersigned judge joined the court. It is not the defendant's fault that Judge Randa passed away over two years ago and is not here now to review the defendant's motion. But this court does not know the case, or the defendant, the way Judge Randa did. Arguably,

the undersigned judge is not "the court that imposed the sentence" as that phrase is used in §3621(b)(4)(B).

Second, and more important, compared to the BOP, this court has little to no information about whether the defendant's request is appropriate. Judge Randa sentenced the defendant to an eight-year term in October 2014, and the defendant's paperwork shows that his projected release date is April 5, 2021 (six and a half years later), and the docket shows that the defendant was in custody from April 17, 2014 until his sentencing date—almost six months. So the court could conclude from the fact that the defendant is scheduled to be released seven years into an eight-year sentence that he has earned some good-time credit. But the documents the defendant submitted don't say whether that is true. The plaintiff says he has had only one incident report during his entire incarceration; his Individualized Reentry Plan (IRP) indicates only that over the six months prior to December 31, 2018, he had one hearing for being absent from an assignment (presumably, that's the incident the defendant described where he overslept and missed work). Dkt. No. 85-1 at 1. The defendant explains a lot about the programming he has *not* taken—he says there was no programming at FCI Elkton, and that he hasn't been able to participate in anything other than the Life Connections Program at Milan because his sentence is too short. But the court notes that the IRP recommended that the plaintiff participate in a course of his choice by June 2019, which implies that the Milan staff believes there must be some program in which the defendant can participate. Id. at 2. It appears that the defendant

5

has been working (as of December 2018, as a recreation orderly), but it appears he does not consider that job one that pays well.

The court does not mean to imply that the defendant isn't telling the truth about the fact that he has conducted himself well during his time in prison, and the court commends him for that. The defendant says that he has made efforts at rehabilitation (programming and education), and the court takes him at his word and commends him for trying. The court simply agrees with the government that the BOP has far more information about how the defendant has done and is doing, and how he'll do over the next few months, than this court does. That is why Congress vested the BOP with the authority to make placement and programming decisions, and that rationale makes even more sense toward the end of a sentence than it does at the beginning.

The government is also correct that what the defendant has done isn't the only factor. The court may have a bit of information about the defendant, but it has *no* information about how many other inmates are scheduled for release at the same time as this defendant, about their post-release needs, about the availability of RRCs. The plaintiff says that he is not seeking release in the Eastern District of Wisconsin, and so the court needn't worry about the fact that there currently is a shortage of halfway houses in this district due to several having closed. Dkt. No. 85 at 7. The court knows even less about the halfway house/RRC situation in whatever district it is that the defendant will be released.

The defendant has two years and three months, give or take, left on his sentence. The IRP indicates that the staffing team will review the defendant's place "under the 2nd Chance Act" when he is "17 to 19 months from his" projected release date—in other words, sometime between September and November of this year. That is reasonable, and would give the BOP plenty of time to decide whether the defendant's request is reasonable or do-able. The court will defer to the BOP's discretion—but it wishes the defendant well in the months he has remaining.

The court **DENIES** the defendant's Motion Requests for Judicial Recommendation. Dkt. No. 85.

Dated in Milwaukee, Wisconsin this 31st day of January, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**